IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| THE ENVIRONMENTAL CONSERVATION ORGANIZATION | § § § § § | |
| Plaintiff, | | |
| VS. | § § | NO. 3-03-CV-2951-BD |
| THE CITY OF DALLAS, | § § § | |
| Defendant. | § | |

### MEMORANDUM OPINION AND ORDER

Defendant the City of Dallas ("the City") has filed a motion for summary judgment in this citizen enforcement action brought under section 505 of the Federal Water Pollution Control Act, also known as the Clean Water Act, 33 U.S.C. § 1251, *et seq.* For the reasons stated herein, the motion is granted in part and denied in part.

I.

Plaintiff The Environmental Conservation Organization ("ECO") is a Texas non-profit corporation organized for the purpose of enforcing environmental regulations and providing educational services regarding environmental stewardship. (Def. MSJ App. at 143). The articles of incorporation provide that ECO shall have one member, RBG Interests, Inc., a Texas corporation owned by James B. Riley, Jr. (*Id.* at 8, 144). Riley also serves as president of ECO. (*Id.* at 3). Although RBG is identified as the sole member of ECO, membership is open to any person who shares the goals of the organization. At present, ECO has approximately three to four dozen members, most of whom reside in the Dallas area. (Plf. MSJ App. at 11, 36-37).

On December 9, 2003, ECO filed the instant lawsuit against the City alleging numerous violations of the Clean Water Act. Two distinct types of violations are alleged. First, ECO contends that the City discharges storm water from its municipal sewer system into the Trinity River and its tributaries without an MS4 permit or in violation of that permit ("MS4 permit claims"). Second, ECO accuses the City of regularly discharging pollutant-laden water from its various facilities without a National Pollutant Discharge Elimination System ("NPDES") or a Texas Pollutant Discharge Elimination System ("TPDES") permit, in violation of such permits, or at levels far exceeding any discharge permitted under state and federal law ("illicit discharge claims"). As relief, ECO seeks a declaratory judgment that the City has violated the Clean Water Act, a permanent injunction compelling future compliance with the Act, and civil penalties in the amount of $27,500 per day for each violation.

The case is before the court on the City's motion for summary judgment. As grounds for its motion, the City contends that ECO lacks standing to bring this suit in its representational capacity and has failed to satisfy the statutory notice requirements of the Clean Water Act. The issues have been fully briefed by the parties and this matter is ripe for determination.

II.

Summary judgment is proper when there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. FED.R.CIV.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). A dispute is "genuine" if the issue could be resolved in favor of either party. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). A fact is "material" if it might reasonably affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

A summary judgment movant who does not have the burden of proof at trial must point to the absence of a genuine fact issue. *Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 312 (5th Cir. 1995). The burden then shifts to the nonmovant to show that summary judgment is not proper. *Duckett v. City of Cedar Park*, 950 F.2d 272, 276 (5th Cir. 1992). The parties may satisfy their respective burdens by tendering depositions, affidavits, and other competent evidence. *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir), *cert. denied*, 113 S.Ct. 82 (1992). All evidence must be viewed in the light most favorable to the party opposing the motion. *Rosado v. Deters*, 5 F.3d 119, 122 (5th Cir. 1993). However, conclusory statements and testimony based merely on conjecture or subjective belief are not competent summary judgment evidence. *Topalian*, 954 F.2d at 1131.

A.

The Supreme Court has recognized that standing is a "core component" of federal jurisdiction. *See FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231, 110 S.Ct. 596, 607-08, 107 L.Ed.2d 603 (1990). In order to establish standing, a plaintiff must demonstrate that: (1) he suffered some threatened or actual injury, (2) fairly traceable to the defendant's conduct, (3) which is likely to be redressed by the relief sought. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992); *Rohm & Haas Texas, Inc. v. Ortiz Brothers Insulation, Inc.*, 32 F.3d 205, 208 (5th Cir. 1994). Stated differently, a party must assert his own legal rights and interests and cannot rest his claim to relief on the legal rights or interests of third parties. *Warth v. Seldin*, 422 U.S. 490, 500, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975). Where, as here, an organization or association brings suit in its representational capacity, the organization must prove that: (1) its members, or any one of them, would have standing to sue individually; (2) the organization is seeking to protect interests that are germane to its purpose; and (3) neither the claim asserted nor the relief sought requires the members to participate in the lawsuit. *Hunt v. Washington*

*State Apple Advertising Commission*, 432 U.S. 333, 343, 97 S.Ct. 2434, 2441, 53 L.Ed.2d 383 (1977); *Sierra Club, Lone Star Chapter v. Cedar Point Oil Co. Inc.*, 73 F.3d 546, 555 (5th Cir.), *cert. denied*, 117 S.Ct. 57 (1996). The party seeking to invoke federal jurisdiction bears the burden of establishing standing. *See Defenders of Wildlife*, 112 S.Ct. at 2136.

The City maintains that ECO cannot prove two elements of organizational standing: (1) that it has actual members with standing to sue individually; and (2) that its members, or any one of them, have suffered an injury fairly traceable to the violations alleged in the complaint that would be redressed by a favorable decision in this case. The court will address these arguments in turn.

1.

In *Friends of the Earth, Inc. v. Chevron Chemical Co.*, 129 F.3d 826, 829 (5th Cir. 1997), the Fifth Circuit adopted an "indicia of membership" test to determine whether an organization has members whose interests it can represent in federal court. Among the factors a court must consider are: (1) whether the members elect the governing body of the organization and finance its activities; (2) whether the members voluntarily associate themselves with the organization; (3) whether the organization has a clearly articulated and understandable membership structure; and (4) whether the suit is within the organization's central purpose and thus within the scope of reasons that the individuals joined the organization. *Friends of the Earth*, 129 F.3d at 829. No court has ever required an organization to satisfy each and every indicia of membership. Rather, it is enough that members possess sufficient indicia to satisfy the purposes that undergird the concept of associational standing-- "that the organization is sufficiently identified with and subject to the influence of those it seeks to represent as to have a 'personal stake in the outcome of the controversy.'" *Oregon Advocacy Center v. Mink*, 322 F.3d 1101, 111 (9th Cir. 2003), *citing Village of Arlington Heights*

*v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 261, 97 S.Ct. 555, 561, 50 L.Ed.2d 450 (1977).

Here, ECO has adduced sufficient evidence to establish that it is identified with and subject to the influence of its members to survive summary judgment on this ground. There is no question that the instant lawsuit is within ECO's central purpose of enforcing environmental regulations. (*See* Def. MSJ App. at 143). Membership in the organization is open to all persons who share its goals. At least three members--James B. Riley, Jr., James B. Riley, Sr., and Andrea Roughton--have testified that they voluntarily associated themselves with the organization. (*See* Plf. MSJ App. at 11, 36, 44).[1] In addition, James B. Riley, Jr. and James B. Riley, Sr. have financed the activities of the organization through financial contributions. (*Id.* at 4, 42). Although the City maintains that ECO is nothing more than Riley's alter ego, the summary judgment evidence, viewed in the light most favorable to plaintiff, is sufficient to create a genuine issue of material fact for trial. *See Association of Community Organizations for Reform Now v. Fowler*, 178 F.3d 350, 357 (5th Cir. 1999).[2]

2.

The City further contends that ECO has failed to establish that its members, or any one of them, have suffered an injury fairly traceable to the violations alleged in the complaint that would be redressed by a favorable decision in this case. The evidence adduced by ECO easily satisfies the

---

[1] The City objects to Andrea Roughton's affidavit because she was not identified as a potential witness on the standing issue. However, ECO provided the same affidavit to the City in response to an earlier motion to dismiss. Therefore, the City was well aware that Roughton was a potential witness in this case. The court reaches a different conclusion with respect to the affidavit of Hayden Hodges, another ECO member. The Hodges affidavit is neither signed nor verified and will not be considered for any purpose. *See Nissho-Iwai American Corp. v. Kline*, 845 F.2d 1300, 1306 (5th Cir. 1988) (unsworn affidavit held insufficient to raise fact issue for trial).

[2] At trial, ECO will be required to establish standing by a preponderance of the evidence. If it fails to meet that burden, the City may reurge its motion to dismiss. *See Defenders of Wildlife*, 112 S.Ct. at 2136 (standing must be supported adequately by evidence offered at trial).

"injury-in-fact" requirement. In her affidavit, Roughton testifies that she regularly visits Turtle Creek, the Trinity River, and White Rock Lake. Her recreational activities at these Dallas waterways include running and watching wildlife. Roughton states that she personally has observed trash, debris, and "a layer of filth" gathering in and floating on these waterways and has experienced a foul order emitting from White Rock Lake which have impeded and adversely affected her recreational activities. (Plf. MSJ App. at 36). This evidence is sufficient to show that at least one member of ECO suffered an actual injury. *See Save Our Community v. U.S. E.P.A.* 971 F.2d 1155, 1160 (5th Cir. 1992) (holding that harm to aesthetic and recreational interests is sufficient to meet "injury-in-fact" prong of standing test in environmental cases); *see also Cedar Point Oil,* 73 F.3d at 558, n.24 (affidavit of one member sufficient to establish standing).

The next issue is whether the alleged injury is "fairly traceable" to the City's conduct. In order to satisfy this requirement of the standing test, ECO must show that: (1) the City discharged some pollutant in concentrations greater than allowed by its permit, (2) into a waterway in which the members of ECO have an interest that is, or may be, adversely affected by the pollutant, and (3) that the pollutant causes or contributes to the kinds of injuries alleged by members of the organization. *See Friends of the Earth, Inc. v. Crown Central Petroleum Corp.*, 95 F.3d 358, 361 (5th Cir. 1996); *Cedar Point Oil,* 73 F.3d at 557. The gravamen of the City's argument is that ECO cannot show any "*concrete* and *particularized* injury that is traceable to any act or omission . . . of which ECO provided notice." (Def. MSJ Br. at 17) (emphasis added). However, "[t]he fairly traceable element does not require that the plaintiff[] 'show to a scientific certainty that [the] defendant's effluent, and [the] defendant's effluent alone, caused the precise harm suffered by the plaintiff[ ].'" *Cedar Point Oil,* 73 F.3d at 558, *quoting Save Our Community,* 971 F.2d at 1161. Rather, ECO need only show that the City's discharges contribute to pollution that impairs its

members' use of Dallas-area waterways. *Id.* ECO has satisfied that burden by eliciting testimony from Robert H. Reeves, a professional engineer specializing in water pollution control. According to Reeves:

> As storm water flows across the surface within a municipality, it collects various pollutants such as fertilizer, trash, sediment, animal feces, pesticides, and automobile fluids. Storm water also includes substances illegally discharged into the MS4 and later carried away by rain water. The polluted storm water enters a MS4, is transported downstream, and is discharged into larger bodies of water . . . The pollutants in storm water often cause foul odors, oily sheens, murky water, and algal blooms. Storm water also causes trash to collect in and discharge from the MS4. . .
>
> The MS4 in Dallas includes (among other natural waterways) White Rock Creek, Turtle Creek, and Cedar Creek. Dallas' MS4 also includes an extensive man-made drainage system, consisting of large pipes and pumps that drain into natural waterways in the City and the Trinity River at discrete places. All portions of Dallas' MS4 ultimately drain into the Trinity River.

(Plf. MSJ App. at 101).[3] This evidence creates a fact issue as to whether the injuries alleged by members of ECO are "fairly traceable" to the violations alleged in its complaint. *Cedar Point Oil,* 73 F.3d at 558 ("fairly traceable" requirement may be satisfied, in part, by expert testimony establishing that defendant's produced water was typical in many respects, and that typical produced water has harmful effects on water quality and marine life); *see also Texans United for a Safe Economy Education Fund v. Crown Central Petroleum Corp.,* 207 F.3d 789, 793 (5th Cir. 2000) (rejecting argument that "fairly traceable" standard cannot be satisfied unless plaintiff's injuries are linked to exact dates when violations of regulatory standards are known to have occurred).

Finally, the City argues that ECO has failed to establish that a favorable decision in this case

---

[3] The City objects that portions of Reeves' affidavit are inconsistent with his deposition testimony. However, those inconsistencies do not make the affidavit inadmissible for summary judgment purposes. *See Kennett-Murray Corp. v. Bone,* 622 F.2d 887, 894 (5th Cir. 1980) ("In light of the jury's role in resolving questions of credibility, a district court should not reject the content of an affidavit even if it is at odds with statements made in an earlier deposition.").

will redress the injuries allegedly sustained by its members. Under this prong of the standing test, it must be "likely" that the injury will be redressed by a favorable decision. *Defenders of Wildlife*, 112 S.Ct. at 2136. This element focuses on the relationship between the remedy requested and the alleged injury. *Allen v. Wright*, 468 U.S. 737, 753 n.19, 104 S.Ct. 3315, 3325 n.19, 82 L.Ed.2d 556 (1984). By this suit, ECO seeks, *inter alia*, a permanent injunction compelling compliance with the Clean Water Act and substantial civil penalties for past violations. If ECO prevails at trial, the relief requested would likely remedy the injuries sustained by its members. *See Texans United*, 207 F.3d at 793 (injunction requiring defendant to cease violations will, at least in part, redress plaintiff's injuries). Therefore, the City is not entitled to summary judgment on this ground.

B.

The City also seeks dismissal of this suit for failure to comply with the statutory notice requirements of the Clean Water Act, 33 U.S.C. § 1365(b)(1)(A). This statute provides, in pertinent part:

> No action may be commenced . . . prior to 60 days after the plaintiff has given notice of the alleged violation (i) to the Administrator [of the Environmental Protection Agency], (ii) to the State in which the alleged violation occurs, and (iii) to any alleged violator of the standard, limitation, or order.

33 U.S.C. § 1365(b)(1)(A). Under regulations promulgated by the Environmental Protection Agency ("EPA"), notice regarding the alleged violation of an effluent standard or limitation, or of an order with respect thereto, must contain:

> sufficient information to permit the recipient to identify the specific standard, limitation, or order alleged to have been violated, the activity alleged to constitute a violation, the person or persons responsible for the alleged violation, the location of the alleged violation, the date or dates of such violation, and the full name, address, and telephone number of the person giving notice.

40 C.F.R. § 135.3(a). Although mandatory, this notice requirement is not jurisdictional in the strict sense of the term. *Lockett v. E.P.A.*, 319 F.3d 678, 682 (5th Cir. 2003). Nevertheless, a court should decline to entertain a citizen enforcement action if proper notice is not given. *Id.*

The Fifth Circuit has yet to elaborate on the specificity requirements of section 135.3. However, other courts have held that the notice provisions of the Clean Water Act and their enforcing regulations do not require a plaintiff to list every aspect or detail of every alleged violation. Rather, a notice letter is sufficient if it provides enough information to give the accused violator an opportunity to correct the problem. *See, e.g. San Francisco BayKeeper, Inc. v. Tosco Corp.*, 309 F.3d 1153, 1158 (9th Cir. 2002); *Public Interest Research Group of New Jersey, Inc. v. Hercules, Inc.*, 50 F.3d 1239, 1247-48 (3d Cir. 1995); *Atwell v. KW Plastics Recycling Division*, 173 F.Supp.2d 1213, 1222 (M.D. Ala. 2001). At least one court has stated that the notice provisions of section 135.3 require no more than "reasonable specificity." *Tosco*, 309 F.3d at 1158.

Here, ECO sent two notice letters to the EPA, the Texas Natural Resource Conservation Commission, and the City. The first letter, dated September 8, 2003, states only that the City has failed to meet its obligations under its MS4 permit "in numerous areas" and that ECO "has documented hundreds of continuing violations of the Clean Water Act." (Plf. MSJ App. at 77). The second letter, dated October 9, 2003, is slightly more detailed, listing more than 150 ongoing violations of the City's MS4 permit in an attachment to the letter. (*Id.* at 79-96). With respect to illicit discharges, the letter states:

> ECO alleges that the City is violating 33 U.S.C. § 1311 by discharging pollutant-laden storm water and non-storm water without a NPDES or TPDES permit, in violation of a NPDES or TPDES permit, and/or at levels far exceeding any discharge permitted under a NPDES or TPDES permit. ECO has developed evidence of these discharges at various sites owned and/or operated by the City, including the Dallas Zoo; the Farmer's Market; Love Field Airport; Dallas Executive Airport; the Fair Oaks, Bachman, and Oak Cliff

> Waste Transfer Stations; McCommas Bluff Landfill; Bachman Water Treatment Plant; the Northeast, Northwest, Southeast, Southwest, and Central Service Centers; and the Central Waste Treatment Plant. These illegal discharges of storm and non-storm water began on or before May 1, 1997, and are ongoing today.

(*Id.* at 80). The October 9 letter was mailed on October 10, 2003 – exactly 60 days before this suit was filed – and thus is timely.

1.

The court determines that the October 9 letter satisfies the notice requirements of 33 U.S.C. § 1365(b) and 40 C.F.R. § 135.3 with respect to MS4 permit violations. Attachment "A" to that letter identifies the precise nature of the alleged violation, the corresponding section number of the permit, and the date on which the violation began. (*Id.* at 82-96). Thus, ECO provided the City with sufficient information to identify each permit violation. Indeed, it is rather disingenuous for the City to argue otherwise. At a meeting held on December 2, 2003, City representatives told ECO that they were prepared to discuss the permit violations identified in Attachment "A" to the letter and could provide proof that virtually all of the alleged violations either had been corrected or would be corrected prior to the expiration of the 60-day notice period. (*Id.* at 75-76). The City would not have been able to make such an offer if it did not understand the nature of the violations relating to its MS4 permit. Consequently, the City is not entitled to summary judgment on this ground.

2.

The court reaches a different conclusion with respect to the other violations set forth in the October 9 letter. The allegation that the City is "discharging pollutant-laden storm water and non-storm water without a NPDES or TPDES permit, in violation of a NPDES or TPDES permit, and/or at levels far exceeding any discharge permitted under a NPDES or TPDES permit," is far too broad to give meaningful notice of ECO's complaint. (*Id.* at 80). It is not clear from this letter whether

ECO contends that the City is discharging pollutants without a permit or has a permit but is violating it. Although ECO maintains that it "has developed evidence of [ ] discharges at various sites owned and/or operated by the City," the notice letter does not identify this evidence, thereby depriving the City of the opportunity to correct the problem. (*Id.*) Nor does the October 9 letter identify any particular pollutant. In its complaint filed just 60 days after notice was sent, ECO identifies a variety of pollutants and contaminants discharged into the Trinity River and its tributaries from City-owned or operated facilities, including: (1) animal feces, urine, pathogens, and other waste from the Dallas Zoo; (2) oil, hydraulic fluid, and gasoline from the Northeast, Northwest, Southeast, Southwest, and Central Service Centers; (3) food waste, trash, and rubbish from the Farmer's Market; and (4) airplane fuel and oil from Dallas Love Field and Executive Airports. (Plf. Orig. Compl. at 5-7, ¶¶ 20-28). The failure to identify these pollutants before suit was filed renders notice insufficient. *See Catskill Mountains Chapter of Trout Unlimited, Inc. v. City of New York*, 273 F.3d 481, 487-88 (2d Cir. 2001).

Moreover, ECO did not provide the City with the date or dates of these alleged violations. The allegation that illegal discharges "began on or before May 1, 1997, and are ongoing today" is insufficient for notice purposes. (Plf. MSJ App. at 80). *See Hudson Riverkeeper Fund, Inc. v. Putman Hospital Center, Inc.*, 891 F.Supp. 152, 154 (S.D. N.Y. 1995). Because ECO failed to provide adequate notice of its illicit discharge claims, those claims must be dismissed.

## CONCLUSION

The City's motion for summary judgment is granted in part and denied in part. The motion is granted with respect to the illicit discharge claims alleged in paragraphs 20-28 of Plaintiff's Original Complaint. Those claims are dismissed without prejudice for failure to provide adequate notice in accordance with 33 U.S.C. § 1365(b) and 40 C.F.R. § 135.3. In all other respects, the

City's motion is denied. The court will set this case for trial by separate order.

DATED: July 26, 2005.

JEFF KAPLAN
UNITED STATES MAGISTRATE JUDGE