IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| THE ENVIRONMENTAL CONSERVATION ORGANIZATION<br><br>Plaintiff,<br><br>VS.<br><br>THE CITY OF DALLAS,<br><br>Defendant. | § § § § § § § § § § § | NO. 3-03-CV-2951-BD |

## MEMORANDUM OPINION AND ORDER

Defendant the City of Dallas ("the City") has filed a motion for summary judgment in this citizen enforcement action brought under section 505 of the Federal Water Pollution Control Act, also known as the Clean Water Act ("CWA"), 33 U.S.C. § 1251, *et seq.* For the reasons stated herein, the motion is granted.

I.

The City operates a municipal separate storm sewer system ("MS4") that collects and discharges storm water into the Trinity River and its tributaries. (*See* Def. MSJ App. at 279). In March 1997, the City obtained a storm water discharge permit from the United States Environmental Protection Agency ("EPA"). (*Id.* at 39). As required by the permit, the City created and implemented a comprehensive storm water pollution and management program ("SWMP") designed to reduce the discharge of pollutants into the MS4. (*Id.* at 71-272). The permit became effective on May 1, 1997 and expired at midnight on April 30, 2002. (*Id.* at 39). A renewal permit was issued on February 22, 2006 and remains in effect today. (*Id.* at 279).[1]

---

[1] In October 2001, the City applied for a renewal storm water discharge permit. However, a new permit was not issued until February 22, 2006. (Def. MSJ App. at 279). In the interim, the City continued to operate its municipal separate storm water system under the expired permit as allowed by federal law. *See* 40 C.F.R. § 122.6.

On December 9, 2003, The Environmental Conservation Organization ("ECO"), a Texas non-profit environmental watch group, sued the City in federal district court for CWA violations ("the ECO Litigation"). Succinctly stated, ECO alleges that the City has all but ignored its obligations under the SWMP by failing to develop and implement an effective program to monitor and reduce the discharge of pollutants into the MS4. (*See* Plf. Orig. Compl. at 8, ¶¶ 29-34).[2] A list of more than 150 specific violations of Sections 4.1-4.20 of the SWMP is included as an attachment to ECO's complaint. (*Id.*, Attch. A).

On February 6, 2004, the EPA issued a Compliance Order citing the City for multiple violations of its SWMP, including many of the violations made the basis of the ECO Litigation. (Def. MSJ App. at 610-52). Among the violations identified in the Compliance Order are:

| SWMP Task or Subtask No. | Description of Alleged Violation |
|---|---|
| 4.8.1<br>4.8.2 | Failure to complete the following required individual tasks as scheduled to reduce to the maximum extent practicable, pollutants discharged from the MS4 associated with the application of pesticides, herbicides, and fertilizer, which include controls such as educational activities, permits, and certifications for applications in public right-of-ways and at municipal facilities.<br><br>**Individual Task**　　　　　　**Completion Date**<br>Task 1　　　　　　　　　　　Years 1-5 (1998-2002)<br>Task 2　　　　　　　　　　　Years 1-5 (1998-2002) |

---

[2] ECO also accused the City of regularly discharging pollutant-laden water from its various facilities without a National Pollutant Discharge Elimination System ("NPDES") permit or a Texas Pollutant Discharge Elimination System ("TPDES") permit, in violation of such permits, or at levels far exceeding any discharge permitted under state and federal law. (*See* Plf. Orig. Compl. at 5-7, ¶¶ 20-28). Those claims were dismissed without prejudice for failure to provide adequate notice in accordance with 33 U.S.C. § 1365(b)(1)(A) and 40 C.F.R. § 135.3. *The Environmental Conservation Organization v. The City of Dallas*, No. 3-03-CV-2951-BD, 2005 WL 1771289 (N.D. Tex. Jul. 26, 2005).

| SWMP Task or Subtask No. | Description of Alleged Violation |
|---|---|
| 4.10.2<br>4.10.3<br>4.10.4<br>4.10.6<br>4.10.9 | Failure to complete the following required individual tasks as scheduled to conduct ongoing field screening activities.<br><br>**Individual Task**　　　　　**Completion Date**<br>Task 2　　　　　　　　　Years 1-2 (1998-1999)<br>Task 3　　　　　　　　　Years 1-5 (1998-2002)<br>Task 4　　　　　　　　　Years 1-5 (1998-2002)<br>Task 6　　　　　　　　　Years 1-2 (1998-1999)<br>Task 9　　　　　　　　　Years 1-5 (1998-2002) |
| 4.12.1.1<br>4.12.1.2<br>4.12.1.3<br>4.12.1.4<br>4.12.1.5<br>4.12.1.6<br>4.12.1.7<br>4.12.1.8<br>4.12.1.9<br>4.12.3.1<br>4.12.3.2 | Failure to complete the following required individual tasks as scheduled to prevent, contain, and respond to spills that may discharge and flow into the MS4.<br><br>**Individual Task**　　　　　**Completion Date**<br>Task 1<br>　　Subtask 1　　　　　　Years 2-5 (1999-2002)<br>　　Subtask 2　　　　　　Years 2-5 (1999-2002)<br>　　Subtask 3　　　　　　Years 2-5 (1999-2002)<br>　　Subtask 4　　　　　　Years 2-5 (1999-2002)<br>　　Subtask 5　　　　　　Years 2-5 (1999-2002)<br>　　Subtask 6　　　　　　Years 2-5 (1999-2002)<br>　　Subtask 7　　　　　　Years 2-5 (1999-2002)<br>　　Subtask 8　　　　　　Years 2-5 (1999-2002)<br>　　Subtask 9　　　　　　Years 2-5 (1999-2002)<br>Task 3<br>　　Subtask 1　　　　　　Year 3 (2000)<br>　　Subtask 2　　　　　　Years 3-5 (2000-2002) |
| 4.14.3.2<br>4.14.3.3 | Failure to complete the following required individual tasks as scheduled to implement educational activities, public information activities, and other activities to facilitate the proper management and disposal of used oil and toxic materials.<br><br>**Individual Task**　　　　　**Completion Date**<br>Task 3<br>　　Subtask 2　　　　　　Years 1-5 (1998-2002)<br>　　Subtask 3　　　　　　Years 1-5 (1998-2002) |

| SWMP Task or Subtask No. | Description of Alleged Violation |
|---|---|
| 4.15.2 | Failure to complete the following required individual tasks as scheduled with regard to programs and/or controls which are currently implemented to limit infiltration of seepage from the municipal sanitary sewers to the MS4.<br><br>**Individual Task**<br>Task 2<br><br>Failure to monitor and test for the presence of wastewater I/I and overflows and direct detected problem areas to the Water Utilities Department for identification and correction under the NPDES Permit No. TX0047830, as specified in the revised SWMP. |
| 4.19.5<br>4.19.6 | Failure to complete the following required individual tasks, as scheduled, to mitigate the adverse environmental impact of storm water runoff by developing Best Management Practice (BMP) requirements.<br><br>**Individual Task**     **Completion Date**<br>Task 5     Years 1-5 (1998-2002)<br>Task 6     Years 1-5 (1998-2002) |

(*Id.* at 631, ¶ 57 & 640-46). Following protracted negotiations, the City and the EPA settled their differences and entered into a Consent Decree which resolves, *inter alia*, "the violations alleged in the Compliance Order through the date of lodging." (*Id.* at 356, ¶ 71). Under the terms of the settlement, the City agreed to pay $800,000 in civil penalties, to undertake two supplemental environmental projects at a cost of at least $1.2 million, to establish an environmental management system, to adhere to minimum staffing and inspection requirements, and to pay stipulated penalties for future violations of the CWA. (*Id.* at 744-50, 755). On May 10, 2006, the United States of America, joined by the State of Texas, filed suit to obtain judicial approval of their settlement with the City and entry of the Consent Decree ("the EPA Litigation"). Although ECO did not oppose

entry of the Consent Decree, it did complain to the EPA and Texas authorities that the terms of the settlement were inadequate in various respects. (*Id.* at 657-60). On August 28, 2006, the court determined that the Consent Decree was fair, reasonable, and consistent with the purposes of the CWA, and entered the decree as its final judgment in the EPA Litigation. (*See id.* at 774).

The City now moves for summary judgment in the ECO Litigation on the ground that the Consent Decree is res judicata of all claims asserted in that case.[3] The issues have been fully briefed by the parties and the motion is ripe for determination.

II.

Summary judgment is proper when there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Where, as here, a party seeks summary judgment on an affirmative defense, the movant must establish "beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original). The burden then shifts to the non-movant to show that summary judgment is not proper. *Duckett v. City of Cedar Park*, 950 F.2d 272, 276 (5th Cir. 1992). The parties may satisfy their respective burdens by tendering depositions, affidavits, and other competent evidence. *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir.), *cert. denied*, 113 S.Ct. 82 (1992). All evidence must be viewed in the light most favorable to the party opposing the motion. *Rosado v. Deters*, 5 F.3d 119, 122 (5th Cir. 1993).

---

[3] The City also argues that the claims alleged by ECO in its complaint, which are based on violations of a permit that expired in 2002, are moot. Because the City is entitled to summary judgment on its res judicata defense, the court need not address this alternative ground for dismissal.

A.

The rule of res judicata, or claim preclusion, "bars the litigation of claims that either have been litigated or should have been raised in an earlier suit." *Test Masters Educational Services, Inc. v. Singh*, 428 F.3d 559, 571 (5th Cir. 2005), *cert. denied*, 126 S.Ct. 1662 (2006). The test for res judicata has four elements: (1) the parties in the subsequent action are identical to, or in privity with, the parties in the prior action; (2) the judgment in the prior case was rendered by a court of competent jurisdiction; (3) there has been a final judgment on the merits; and (4) the same claim or cause of action is involved in both suits. *Id.*; *see also Ellis v. Amex Life Insurance Co.*, 211 F.3d 935, 937 (5th Cir. 2000). Although the Fifth Circuit has never considered whether res judicata applies to a citizen enforcement action under the CWA, those courts that have considered the issue have concluded that the principles of res judicata apply to citizens suits, like the one brought by ECO, where the government subsequently files suit and obtains a judgment based on the same violations alleged in the earlier-filed citizen enforcement action. *See, e.g. Friends of Milwaukee's Rivers v. Milwaukee Metropolitan Sewerage Dist.*, 382 F.3d 743, 752 (7th Cir. 2004), *cert. denied*, 125 S.Ct. 1593 (2005); *Alaska Sport Fishing Ass'n v. Exxon Corp.*, 34 F.3d 769, 774 (9th Cir. 1994); *Atlantic States Legal Foundation, Inc. v. Eastman Kodak Co.*, 933 F.2d 124, 174 (2d Cir. 1991); *United States v. City of Green Forest*, 921 F.2d 1394, 1403-05 (8th Cir.), *cert. denied*, 112 S.Ct. 414 (1991).

B.

ECO first argues that a citizen suit cannot be dismissed on res judicata grounds where the government fails to initiate an enforcement proceeding within 60 days of receiving notice of the alleged CWA violation. In support of this argument, ECO relies on the federal statute authorizing citizen enforcement actions, 33 U.S.C. § 1365, which provides, in pertinent part:

> Except as provided in subsection (b) of this section and section 1319(g)(6) of this title, any citizen may commence a civil action on his own behalf--
>
> against any person . . . who is alleged to be in violation of (A) an effluent standard or limitation under this chapter or (B) an order issued by the Administrator or a State with respect to such a standard or limitation[.]

33 U.S.C. § 1365(a)(1). Subsection (b) prohibits the filing of a citizen suit:

> prior to sixty days after the plaintiff has given notice of the alleged violation (i) to the Administrator, (ii) to the State in which the alleged violation occurs, and (iii) to any alleged violator of the standard, limitation, or order[.]

*Id.* § 1365(b)(1)(A). According to ECO, Congress imposed this 60-day notice requirement "as the way to balance the potential tensions between allowing citizens to sue and preferring the government to do so." (Plf. MSJ Resp. Br. at 3). Because the government did not act within the 60-day waiting period, ECO believes that it may continue to prosecute its citizen suit, notwithstanding the subsequent enforcement action filed by the government which has been resolved by entry of a consent decree.

The court cannot accept ECO's broad reading of section 1365. Neither the statute itself nor the cases cited by ECO in its summary judgment response address the preclusive effect of a consent decree entered in a government enforcement action that was filed *after* the citizen suit was initiated. Section 1365, by its terms, specifies the jurisdictional prerequisites for filing a citizen enforcement action under the CWA. Similarly, the cases cited by ECO deal with standing, statutory preclusion, and mootness. None of those cases even mention, much less discuss, the res judicata implications of a consent decree entered in a government enforcement action. *See Altamaha Riverkeepers v. City of Cochran*, 162 F.Supp.2d 1368, 1373 (M.D. Ga. 2001); *Public Interest Research Group of New Jersey, Inc. v. ELF Atochem North America, Inc.*, 817 F.Supp. 1164, 1171-73 (D.N.J. 1993); *Natural

*Resources Defense Council, Inc. v. Loewengart & Co.*, 776 F.Supp. 996, 1000 (M.D. Pa. 1991).[4] The court is unaware of any authority which would prevent application of the well-settled principles of res judicata to citizen suits brought under the CWA.

### C.

Having determined that the City may assert a res judicata defense, the elements of the defense must be examined. ECO tacitly concedes the second and third elements--that the Consent Decree was rendered by a court of competent jurisdiction and constitutes a final judgment on the merits. Instead, ECO argues that: (1) the privity requirement is not met because the government did not "diligently pursue" its case; and (2) the Consent Decree does not resolve all of the claims raised in the citizen suit. (Plf. MSJ Resp. Br. at 22-25). Assuming that diligent prosecution is required,[5] government prosecutions under the CWA are heavily presumed to be "diligent." *See, e.g. Friends of Milwaukee's Rivers*, 382 F.3d at 760; *Karr v. Hefner*, 475 F.3d 1192, 1197-98 (10th Cir. 2007); *Citizens Legal Environmental Action Network v. Premium Standard Farms, Inc.*, No. 97-6073-C-SJ, 2000 WL 220464 at *12 (W.D. Mo. Feb. 23, 2000) (citing cases); *Williams Pipe Line Co. v. Bayer Corp.*, 964 F.Supp. 1300, 1324 (S.D. Iowa 1997). Indeed, the court in *Premium Standard Farms* noted that absent unique circumstances, "a consent order should be viewed as sufficient in itself to

---

[4] The court notes that in two of those cases, *Natural Resource Defense Council* and *Altamaha Riverkeepers*, res judicata would not apply in any event because the consent decree had not yet been entered by the court and was not a final judgment.

[5] The Seventh Circuit is the only appellate court to suggest that "diligent prosecution" is a necessary element of privity. *See Friends of Milwaukee's Rivers*, 382 F.3d at 760 (notwithstanding the heavy presumption in favor of diligent prosecution by the government, the court must examine whether the consent decree was "capable of requiring compliance with the Act and [was] in good faith calculated to do so"). Other courts have expressly held that the "diligent prosecution" requirement only limits the ability of a citizen to file suit after "the [EPA] Administrator or State has commenced and is diligently prosecuting a civil or criminal action in a court of the United States, or a State to require compliance with the standard, limitation, or order." *See* 33 U.S.C. § 1365(b)(1)(B). "Diligent prosecution" does not appear to be a factor in determining whether res judicata precludes a citizen from continuing to prosecute an earlier-filed enforcement action after entry of a consent decree in a subsequent case brought by the government. *See Ellis v. Gallatin Steel Co.*, 390 F.3d 461, 473 (6th Cir. 2004); *City of Green Forest*, 921 F.2d at 1403-04.

satisfy the requirement of diligent prosecution." *Premium Standard Farms*, 2000 WL 220464 at *18, *quoting Sierra Club v. SCM Corp.*, 572 F.Supp. 828, 831 n.3 (W.D.N.Y. 1983). The court concludes, as a matter of law, that the EPA and the State of Texas diligently prosecuted their enforcement action against the City as evidenced by the comprehensive relief obtained in the Consent Decree.

In order to determine whether the ECO Litigation and the EPA Litigation involve the same claims or causes of action, the court uses a "transactional test." As the Fifth Circuit explained:

> Under the transactional test, a prior judgment's preclusive effect extends to all rights of the plaintiff with respect to all or any part of the transaction, or series of connected transactions, out of which the original action arose. What grouping of facts constitutes a "transaction" or a "series of transactions" must be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage. If a party can only win the suit by convincing the court that the prior judgment was in error, the second suit is barred.

*Test Masters*, 428 F.3d at 571 (internal citations omitted). The critical issue is whether the two suits are based on the "same nucleus of operative facts." *Id.*; *see also Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 313 (5th Cir. 2004). ECO argues that the complaint in the EPA Litigation does not mention sections 4.8, 4.10, 4.12, 4.14, 4.15, or 4.19 of the SWMP. While this may be true, ECO ignores the fact that the Consent Decree expressly resolves "the violations alleged in the Compliance Order through the date of lodging." (Def. MSJ App. at 356, ¶ 71). The Compliance Order, which is attached as an appendix to the Consent Decree, specifically addresses violations of sections 4.8, 4.10, 4.12, 4.14, 4.15, and 4.19. (*Id.* at 640-44, 646). In addition, the City has submitted a detailed summary explaining how the Consent Decree resolves each and every violation alleged in the ECO

Litigation. (*Id.*, 781-827).[6] Consequently, ECO is precluded from litigating the same claims in a citizen suit. *See Premium Standard Farms*, 2000 WL 220464 at *7, *citing* 18 A Wright, Miller & Cooper, *Federal Practice and Procedure*, § 4443 at 386-87 (1981) *and Larken, Inc., v. Wray*, 189 F.3d 729, 733 n.9 (8th Cir. 1999).

## CONCLUSION

The City's motion for summary judgment [Doc. #101] is granted on its affirmative defense of res judicata. The court will dismiss all remaining claims in this action by separate judgment filed today.

SO ORDERED.

DATED: April 26, 2007.

JEFF KAPLAN
UNITED STATES MAGISTRATE JUDGE

---

[6] In its complaint, ECO alleges that the City violated Subtask 4.10.1 of the SWMP by "fail[ing] to institute a citizen report telephone number" and Subtask 4.14.4 by "fail[ing] to initiate [a] public information campaign for HHW issues." (*See* Plf. Orig. Compl., Attch. A at 13, 15). Neither the Compliance Order nor the complaint filed in the EPA Litigation specifically refer to these subtasks. However, as the City explains in its summary, Subtask 4.10.2, which requires the City to institute a citizen observer program, includes the creation of a citizen report telephone number. (*See* Def. MSJ App. at 812). Subtask 4.10.2 is referenced in the Compliance Order. (*Id.* at 641). The City also points out that the SWMP does not include a Subtask 4.14.4, nor is there any corresponding requirement that matches ECO's description. (*See id.* at 817). ECO offers no evidence to the contrary.